(No. 5603. Decided July 19, 1905.)

THE STATE OF WASHINGTON, *on the Relation of T. W. Hammond, Respondent,* v. E. W. ROSS, *as Commissioner of Public Lands, Appellant.*[1]

PUBLIC LANDS—OYSTER RESERVES—STATE OYSTER COMMISSION—COUNTY BOARDS—POWERS—STATUTE—CONSTRUCTION—IMPLIED REPEAL OF PROVISIONS RELATING TO COUNTY BOARDS OF OYSTER COMMISSIONERS. Laws 1903, p. 340, creating a state oyster commission, prescribing duties practically the same as those of the county boards of oyster commissioners under Laws 1897, p. 299, and providing different fees and penalties for the same acts and violations, was clearly intended to give the whole control of oyster reserves to the state commission to the exclusion of the county boards, and impliedly entirely repeals the earlier law relating to the powers of county boards, which therefore have no further authority.

Appeal from a judgment of the superior court for Thurston county, Linn, J., entered January 4, 1905, granting a writ of mandate as prayed for, upon overruling a demurrer to the petition. Affirmed.

*The Attorney General,* and *A. J. Falknor* and *E. C. Macdonald, Assistants (Welsh Bros.,* of counsel), for appellant.

*B. F. Heuston,* for respondent.

MOUNT, C. J.—This appeal is from a judgment of the lower court, commanding the commissioner of public lands to act upon an application of relator to purchase certain tide lands without reference of said application to the county board of oyster land commissioners of Pacific county. The only question in the case is whether or not the act of March 11, 1897, entitled "An act to secure to the public the continued use of natural oyster beds," is superseded and repealed by implication by the act of March 16, 1903, entitled:

"An act to create a state oyster commission, to define its duties and powers, to provide for the protection and man-

[1] Reported in 81 Pac. 725.

agement of the state oyster land reserves, to create a fund to be known as the Oyster Fund, providing for the issue of license to take oysters from the state oyster land reserves, providing for a penalty for violation of the provisions of this act, making an appropriation and declaring an emergency." Laws 1903, p. 340.

The act of 1897, which is found on page 298 of the Laws of 1897, provides for the appointment by the governor of county boards, consisting of three persons, to be known as the "board of oyster land commissioners." The second section of the act is as follows:

"In case of application to purchase oyster lands, the state commissioner of public lands shall, at the time of publication of notice of application to purchase, require the county board of oyster land commissioners to immediately inspect the land applied for and report to the commissioner of public lands their findings as to the following facts: First: Whether the land or any portion thereof is a natural oyster bed. Second: Whether it be necessary in order to secure adequate protection to any natural oyster bed, to retain in the public domain the land the application for the purchase of which has been made, or any portion thereof. Third: Whether the land or any portion therof, having been a natural oyster bed within ten years past, may reasonably be expected to again become such within ten years in the future."

The act then provides for the procedure in case any of the questions are answered in the affirmative. Section 6 provides for the survey and platting of natural oyster beds, and lands adjacent thereto sufficient for their protection. Section 7 provides that the commissioner of public lands shall declare such lands natural oyster bed reserves, and reserved from sale, lease, or conveyance. The balance of the act defines natural oyster beds, and the powers and duties of the board of oyster land commissioners in reference to caring for, protecting, and replenishing the same, and for the prosecution of offenders under the act.

The act of 1903, which is found in the laws of that year

beginning on page 340, provides for the creation of a state oyster commission, to consist of the governor, the commissioner of public lands, and the fish-commissioner. Sections 2, 3, and 4 provide for the keeping of records of all meetings of the board, and the times and place of meeting, and the number which shall constitute a quorum to render a decision. Sections 5 and 6 provide as follows:

"Sec. 5. It shall be the duty of the state oyster commission, and they shall have power to:

"(1)    Examine all existing oyster reserves and to do or cause to be done such things as may be deemed advisable, to conserve, protect and develop said reserves as now established and that may be hereafter established; and to make such rules and regulations as may be found necessary or desirable to carry into effect the provisions of this act.

"(2)    To immediately examine all tide or oyster lands belonging to the state (except tide lands of the first class and lands hereinabove provided for) and to survey, plat and establish thereon what shall be and constitute oyster reserves for the future.

"(3)    To cause a survey or resurvey of all the state oyster land reserves now existing or to be established by the said commission, to be made before the first day of October, 1903, or as soon thereafter as possible, and shall have each angle of the boundary line indicated by a stone of not less than one hundred pounds in weight and marked with the letters S. R. cut thereon in letters not less than three inches long and one-half inch deep, and to cause all oyster reserves to be platted, said plats to be filed in the office of the commissioner of public lands and in the office of the auditor of the county wherein said reserves are located; and in cases where the adjoining lands are used in whole or in part by private individuals for the production of oysters, stakes shall be kept standing on all of the angles of the boundary, the tops of which shall be at least four feet above high tide.

"(4)    Said commission may, when it seems to them advisable, close any portion of any of the reserves against the removal of oysters for any period of time, not longer than two years at one time: *Provided,* That such closed periods may be thereafter renewed, from time to time, not exceeding in all four years, by the commission.

"(5)   To care for and protect all reserves and to reseed and replant such as are in need of seed.

"(6)   To employ such patrolmen and deputies as may be necessary for the protection of oyster reserves and collect licenses and payment for seed oysters and to define their duties.

"Sec. 6.   The tide land within all oyster reserves established and surveyed and platted by said state oyster commission shall be forever reserved from sale or lease."

Section 7 provides for a license to take said oysters, and sections 8, 9, 10, and 11 provide for the time for taking seed, and what the application therefor shall contain, the provisions of the license, and the fee therefor, which is a different fee from the one provided for in the act of 1897. Section 12 provides for an oyster fund, and section 13 provides for a penalty for a violation of the act by any person. This is a different penalty from the one provided in the act of 1897.   Section 14 makes an appropriation for carrying the act into effect.

There is no repealing clause to the later act, nor is there any reference therein to any other act, or to any subordinate body having charge of any of the oyster lands belonging to the state.   This later act gives the whole of the state oyster lands into the hands of the state oyster commission with plenary power to,

".   .   .   examine all existing oyster reserves and to do or cause to be done such things as may be deemed advisable to conserve, protect, and develop said reserves as now established, and that may be hereafter established, and to make such rules and regulations as may be found necessary or desirable to carry into effect the provisions of this act,"

and to establish on all tide lands, except tide lands of the first class, oyster reserves for the future.   The duties of the state oyster commission, in reference to caring for and protecting the oysters and seed, are practically the same as those of the county board of oyster land commissioners under the old act.   The fee for licenses to take seed is different,

and the price of seed gathered is different, under the new act, and the penalty for a violation of the same provision in the two acts is different.

It is apparent from a reading of the two acts that they cannot stand together in regard to protection, management, and control of the oyster reserves. The legislature of 1903 clearly intended to give the whole control of these reserves into the hands of the state oyster commission, to the exclusion of the county board of oyster land commissioners, under the act of 1897.

But it is argued by appellant that there is no provision in the act of 1903 covering the provisions contained in § 2 of the act of 1897, above quoted, relating to the sale of tide or oyster lands. It is true that there is no express provision of that kind in the act of 1903. The provisions in § 2 of the act of 1897 were clearly for the purpose of preventing the sale of tide lands which were natural oyster beds and which were necessary for the protection of such beds, or which might reasonably be expected to become such beds, where applications were filed to purchase tide lands from the commissioner of public lands under other laws providing for the conditional sale of certain tide lands fit for oyster culture. Some such provision as that contained in § 2 of the act of 1897 was necessary to give the oyster commissioners control of the natural oyster beds. The sale of tide lands was vested in the commissioner of public lands, and not in the board of oyster land commissioners. Applications were referred to that board, so that natural oyster beds which had not been declared such might not be sold. The provisions were necessary for the purpose of control and preservation of the oyster beds by the board of oyster land commissioners, and were for no other purpose. These provisions were not independent provisions, capable of enforcement when the substantial law failed. The power of control being now vested in the state oyster commission by the later act, the provisions of the earlier act relating to the

powers of the old board must necessarily fail. Furthermore, while the act of 1903 is more general, we think that the provision of § 5, which reads that the state oyster commission shall have power,

".  .  . to do or cause to be done such things as may be deemed advisable to conserve, protect, and develop said reserves as now established and that may be hereafter established, and to make such rules and regulations as may be found necessary or desirable to carry into effect the provisions of this act,"

includes the power to pass upon the questions contained in § 2 of the act of 1897, and other questions of that character going to the protection of natural oyster beds. We are of the opinion, therefore, that all the provisions of the act of 1897 above referred to are covered by the subsequent act of 1903, and that the former act is entirely repealed by the enactment of the later law. The county board of oyster land commmissioners, therefore, have no further authority under the law.

The judgment appealed from is affirmed.

CROW, ROOT, FULLERTON, RUDKIN, HADLEY, and DUNBAR, JJ., concur.