[No. 8195. Department Two. December 10, 1909.]

THE STATE OF WASHINGTON, *Appellant*, v. FRANK Z. HEUSTON *et al.*, *Respondents*[1]

PUBLIC LANDS—SALE—LANDS SUBJECT TO SALE—OYSTER BEDS— FINDING OF COMMISSIONERS—EFFECT—FRAUD IN APPLICATION FOR SALE. Where the law required the state oyster commission to examine all natural oyster beds and establish reserves, and the commission established reserves in the vicinity of certain lands which were excluded from the reserve, making the same subject to sale, and such lands were afterwards sold by the state, the state is concluded by the acts of the commissioners, who are presumed to have done their duty, in the absence of fraud or improper motive on their part, and cannot attack the deeds on the ground that the original applicants for the land knew that the same contained natural oyster beds and had made false affidavits to secure the sale of the land.

Appeal from a judgment of the superior court for Pacific county, Rice, J., entered April 1, 1909, dismissing an action to cancel state deeds to oyster lands, upon sustaining objections to evidence offered. Affirmed.

*The Attorney General* and *John I. O'Phelan*, for appellant, contended that natural oyster beds have at all times been reserved from sale. Laws 1873, p. 463; Laws 1877, p. 306; Laws 1891, p. 208, ch. 110; Laws 1895, p. 527, ch. 178, § 83; Laws 1897, p. 298, ch. 107, § 9; Laws 1899, p. 270, ch. 134. A natural oyster bed is one where oysters are growing naturally in sufficient quantities to be of practical value. Laws 1897, p. 301, ch. 107, § 8; *State v. Willis*, 104 N. C. 764, 10 S. E. 764; *People v. Hazen*, 121 N. Y. 313, 24 N. E. 484; *Fleet v. Hegeman*, 14 Wend. (N. Y.) 42. Natural oyster beds cannot be sold, but must be retained as part of the public domain for the use of the people. *Averill v. Hull*, 37 Conn. 320; *State ex rel. Blount v. Spencer*, 114 N. C. 770, 19 S. E. 93; *Cook v. Raymond*, 66 Conn. 285; *Clinton v. Bacon*, 56 Conn. 508; *Hurst v. Dulany*, 84 Va.

[1]Reported in 105 Pac. 474.

701, 5 S. E. 802; *Cain v. Simonson* (Ala.), 39 South. 571; *People v. Hazen, supra; State ex rel. Smith v. Forrest*, 8 Wash. 610, 36 Pac. 686, 1120. A deed or patent thereof is absolutely void. *Cook v. Raymond, Clinton v. Bacon,* and *State ex rel. Smith v. Forrest, supra;* 26 Am. & Eng. Ency. Law (2d ed.), 394-395; *Morton v. Nebraska,* 21 Wall. 660, 22 L. Ed. 639; *Burfenning v. Chicago etc. R. Co.,* 163 U. S. 321, 16 Sup. Ct. 1018, 41 L. Ed. 175; *Id.,* 41 Fed. 176; *Barry v. Gamble,* 3 How. 32, 11 L. Ed. 479; *Clark v. Herington,* 186 U. S. 206, 22 Sup. Ct. 872, 46 L. Ed. 1128; *Garrard v. Silver Peak Mines,* 94 Fed. 983; *Stewart v. Alstock,* 22 Ore. 182, 29 Pac. 553; *Doolan v. Carr,* 125 U. S. 618, 8 Sup. Ct. 1228, 31 L. Ed. 844; *Sherman v. Buick,* 93 U. S. 209, 23 L. Ed. 849. Such deed transfers no title. *United States v. Stone,* 2 Wall. 525, 17 L. Ed. 765; *Burfenning v. Chicago etc. R. Co.,* and *Morton v. Nebraska, supra.* The character of the land at the time it was applied for may be shown. 26 Am. & Eng. Ency. Law (2d ed.), 396; *United States v. Minor,* 114 U. S. 233, 5 Sup. Ct. 836, 29 L. Ed. 110; *United States v. Central Pac. R. Co.,* 84 Fed. 218; *United States v. Coos Bay Wagon-Road Co.,* 89 Fed. 151; *Mullan v. United States,* 118 U. S. 271, 6 Sup. Ct. 1041, 30 L. Ed. 170; *Western Pac. R. Co. v. United States,* 108 U. S. 510, 2 Sup. Ct. 802, 27 L. Ed. 806; *Smelting Co. v. Kemp,* 104 U. S. 636, 26 L. Ed. 875; *Wright v. Roseberry,* 121 U. S. 488, 7 Sup. Ct. 985, 30 L. Ed. 1039; *Garland v. Wynn,* 61 U. S. 6, 15 L. Ed. 801; *Pierce v. Frace,* 157 U. S. 372, 15 Sup. Ct. 635, 39 L. Ed. 737; *King v. McAndrews,* 111 Fed. 860; *United States v. Throckmorton,* 98 U. S. 61, 25 L. Ed. 93; *Barden v. Northern Pac. R. Co.,* 154 U. S. 288, 14 Sup. Ct. 1030, 38 L. Ed. 992; *United States v. Hughes,* 11 How. 552, 13 L. Ed. 809; *Moore v. Robbins,* 96 U. S. 530, 24 L. Ed. 848; *United States v. Beebe,* 127 U. S. 338, 8 Sup. Ct. 1083, 32 L. Ed. 121; *Lake Superior Ship Canal R. & Iron Co. v. Cunningham,* 155 U. S. 354, 15 Sup. Ct. 103, 39 L. Ed. 183. The notice was not pub-

lished for three successive weeks. *Hill v. Faison,* 27 Tex. 428, 49 L. R. A. 219; *Meredith v. Chancey,* 59 Ind. 466; *Smith v. Rowles,* 85 Ind. 264; *Eric Sav. Fund & Bldg. Ass'n v. Thompson,* 13 Phila. 511; *Athens Nat. Bank v. Frost,* 3 Pa. Dist. R. 601; *Steuart v. Meyer,* 54 Md. 454. The fraud of the applicants entitles the state to a cancellation of the deed. *United States v. Minor, United States v. Central R. Co., United States v. Throckmorton, United States v. Beebe,* and *State ex rel. Smith v. Forrest, supra.*

*T. W. Hammond* (*H. W. B. Hewen* and *E. R. York,* of counsel), for respondents, contended, that the publication was sufficient. Bal. Code, § 2237; 17 Ency. Plead & Prac., 98; *Southern Indiana R. Co. v. Indianapolis & L. R. Co.,* 168 Ind. 360, 81 N. E. 65; *Alexander v. Alexander,* 26 Neb. 68, 41 N. W. 1065; *Security Co. of Hartford v. Arbuckle,* 123 Ind. 518, 24 N. E. 329; *Wells v. Kelly,* 11 Utah 421, 40 Pac. 705; *Bachelor v. Bachelor,* 1 Mass. 256; *State ex rel. Boyd v. Superior Court,* 6 Wash. 352, 33 Pac. 827. The state could not complain of the publication. *Hinton v. Knott,* 134 Ill. App. 294; *Le Marchel v. Teagarden,* 152 Fed. 662; *Oregon Short Line R. Co. v. Stalker,* 14 Idaho 371, 94 Pac. 59. Fraud of the applicants would not be sufficient ground for the cancellation of the deed. *Woolsey v. Haynes,* 165 Fed. 391; *Wiseman v. Eastman,* 21 Wash. 163, 57 Pac. 398; *Le Marchel v. Teagarden, supra; Paterson v. Ogden,* 141 Cal. 43, 74 Pac. 443, 99 Am. St. 31; *Miller v. Margerie,* 149 Fed. 694; *King v. McAndrews,* 111 Fed. 860. The statements in the affidavits were not made with intent that they be acted on. *Thorp v. Smith,* 18 Wash. 277, 51 Pac. 381; *Tacoma v. Tacoma Light & Water Co.,* 16 Wash. 288, 47 Pac. 738; *United States v. Detroit Timber & Lumber Co.,* 124 Fed. 393; *United States v. Clark,* 125 Fed. 774. Whether the land constituted a natural oyster bed is matter of opinion, and the state could not rely thereon. *State v. Willis,* 104 N. C. 764, 10 S. E. 764; *Baker-Boyer*

*Nat. Bank v. Hughson*, 5 Wash. 100, 31 Pac. 423; *Baker v. Bicknell*, 14 Wash. 29, 44 Pac. 107; *Van Horn v. O'Conner*, 42 Wash. 513, 85 Pac. 260; *Hubbell v. Meigs*, 50 N. Y. 480; Bishop, Non-Contract Law, § 325. The state had equal knowledge with the respondents at the time the deed was issued, and the law therefore cannot grant it relief. *Pigott v. Graham*, 48 Wash. 348, 93 Pac. 435, 14 L. R. A. (N. S.) 1176; *Hines v. Royce*, 127 Mo. App. 718, 106 S. W. 1091; *Irby v. Tilsley*, 41 Wash. 211, 83 Pac. 97; *Walsh v. Bushell*, 26 Wash. 576, 67 Pac. 216; *Hulet v. Achey*, 39 Wash. 91, 80 Pac. 1105; *Grinrod v. Anglo-American Bond Co.*, 34 Mont. 169, 85 Pac. 891; *Power & Bro. v. Turner*, 37 Mont. 521, 97 Pac. 950; *Ransier v. Dwyer*, 149 Mich. 487, 112 N. W. 1120; *Pittsburgh Life & Trust Co. v. Northern Cent. Life Ins. Co.*, 140 Fed. 888. The state was not deceived and did not act on the representations. *Whitehurst v. Life Ins. Co. of Virginia*, 149 N. C. 273, 62 S. E. 1067; *Hutchason v. Spinks*, 3 Cal. App. 291, 85 Pac. 132; *Clark Co. v. Rice*, 127 Wis. 451, 106 N. W. 231; *Belding v. King*, 159 Fed. 411; *Foster v. Oberreich*, 230 Ill. 525, 82 N. E. 858. The action of the state oyster commission concludes all inquiry concerning the nature of the lands. *Colorado Coal & Iron Co. v. United States*, 123 U. S. 307, 8 Sup. Ct. 131, 31 L. Ed. 182; *King v. Andrews, supra; United States v. Winona & St. P. R. Co.*, 67 Fed. 948; *De Cambra v. Rogers*, 189 U. S. 119, 23 Sup. Ct. 519, 47 L. Ed. 734; *Wiseman v. Eastman, supra; Kerns v. Lee*, 142 Fed. 985; *French v. Fyan*, 93 U. S. 169, 23 L. Ed. 812; *Rogers Locomotive Machine Works v. American Emigrant Co.*, 164 U. S. 559, 17 Sup. Ct. 188, 41 L. Ed. 552; *McCormick v. Hayes*, 159 U. S. 332, 16 Sup. Ct. 37, 40 L. Ed. 171; *White v. Petty*, 57 Conn. 576, 18 Atl. 253, 19 Atl. 152; *State v. Nash*. 62 Conn. 47, 25 Atl. 451; *Small v. Lutz*, 41 Ore. 570, 67 Pac. 421, 69 Pac. 825; *Warner Valley Stock Co. v. Morrow*, 48 Ore. 258, 86 Pac. 369; *United States v. Mackintosh*, 85 Fed. 333. Their action is not subject to review by the courts.

*Lindsay v. Hawes,* 2 Black 554, 17 L. Ed. 265; *Trinwith v. Smith,* 42 Ore. 239, 70 Pac. 816; *Stangair v. Roads,* 41 Wash. 583, 84 Pac. 405; *Cragin v. Powell,* 128 U. S. 691, 9 Sup. Ct. 203, 32 L. Ed. 566; *Haydel v. Dufresne,* 17 How. 23, 15 L. Ed. 115; *Tolleston Club of Chicago v. State,* 141 Ind. 197, 38 N. E. 214, 40 N. E. 690. The lands were subject to sale. *State ex rel. Smith v. Forrest,* 8 Wash. 610, 36 Pac. 686, 1120; *Lockhart v. Johnson,* 181 U. S. 516, 21 Sup. Ct. 665, 45 L. Ed. 979; *White v. Petty, supra.*

MOUNT, J.—This action was brought by the state to set aside certain deeds issued by the commissioner of public lands, to the respondents, for certain described oyster lands. It is alleged, that the lands described were natural oyster beds at the time applications were made to purchase the same; that the lands were reserved from sale, and that the applicants falsely and fraudulently made affidavits to the effect that the lands applied for were not natural oyster beds, and thereby intended to, and did, deceive the officials in charge of the land department, and thereby the applications were granted and deeds issued upon the *ex parte* affidavits of the applicants. These allegations were all denied by the answer. At the trial the appellant offered to prove that the lands in controversy had been natural oyster beds from the year 1854 down to the time of the trial, and that,

"Such applicants for the land in controversy knew the condition of these lands with reference to the quantity of oysters upon them at the time of making their application, and that each of the applicants knew that the lands supported oysters growing naturally in sufficient quantities to be of value as a source of oyster supply at the time they made their applications to purchase the same; that the applicants knew the lands in controversy supported oysters growing thereon naturally in sufficient quantity to be valuable as a source of oyster supply at the time of making the application, or by the use of reasonable diligence they could have ascertained those facts by an inspection of the lands."

.The court excluded this evidence. Whereupon the plaintiff rested, and the court dismissed the action. Plaintiff has appealed, and bases error on the ruling of the court excluding this evidence.

The facts as shown by the pleadings and evidence introduced are, in substance, that. on February 25, 1903, one Alexander Thornely and six other persons made application to purchase the several tracts of land involved here, for the purpose of oyster culture. These applicants filed the usual affidavits in the land office, stating among other things that they had full knowledge of the character of the lands; that there were no natural oyster beds thereon, and that the lands were suitable for the cultivation of oysters. The statute then in force provided that, on the filing of such applications, the commissioner of public lands should require the county board of oyster commissioners to immediately inspect the lands applied for and report to him the character of such lands and, in case the report showed that the lands were natural oyster beds, the commissioner should investigate the matter at a public hearing where the lands were situated and, unless it should conclusively appear that the county board was in error, the application should be denied. Laws 1897, p. 298. In March, 1903, while the applications were pending before the land office, the legislature passed an act creating a state oyster commission. Laws 1903, p. 340, ch. 166. This act became effective immediately, and provided that such commission should consist of the governor, commissioner of public lands, and the fish commissioner, and defined the duties of this commission, at § 5, to:

"(1)   Examine all existing oyster reserves and to do or cause to be done such things as may be deemed advisable, to conserve, protect, and develop said reserves as now established and that may be hereafter. established, and to make such rules and regulations as may be found necessary or desirable to carry into effect the provisions of this act.

"(2)   To immediately examine all tide or oyster lands be-

longing to the state (except tide lands of the first class and lands hereinabove provided for) and to survey, plat and establish thereon what shall be and constitute oyster reserves for the future.

"(3) To cause a survey or re-survey of all the state oyster land reserves now existing or to be established by the said commission, to be made before the first day of October, 1903, or as soon thereafter as possible, and shall have each angle of the boundary line indicated by a stone," etc.

Section 6 of that act also provided as follows: "The tide land within all oyster reserves established and surveyed and platted by said state oyster commission shall be forever reserved from sale or lease." Laws 1903, p. 340. After the passage of this act, and in August, 1903, the commissioner of public lands referred the applications above mentioned to the local board of oyster land commissioners of Pacific county, wherein the lands were located, requiring that board to answer the following questions:

"(1) Is the land or any portion thereof a natural oyster bed.

"(2) If this land or any part of it is a natural oyster bed, is it necessary in order to secure adequate protection to it to retain it or any part of it in the public domain.

"(3) Whether the land or any portion thereof having been a natural oyster bed within ten years past, may reasonably be expected to again become such within ten years in the future."

On April 5, 1904, the said oyster land commission entered an order establishing the Long Island state reserve, in Pacific county, but the lands in controversy were excluded from that reserve. In the months of November and December, 1904, notices of the application to purchase were published by the commissioner of public lands. On November 25, 1904, the local board of oyster commissioners reported upon the questions theretofore submitted to them, answering all those questions in the affirmative, and to the effect that the lands applied for were a natural oyster bed necessary to be retained as public domain, and that the same have been reserved by the

state. Before or about the time this report was made, an action in mandamus was brought on behalf of the applicants to compel the commissioner of public lands to act upon the applications to purchase, without regard to the reference of such applications to the county board, and without regard to any report which that board should make. Upon a trial of the case, the mandate was issued, and an appeal was thereupon prosecuted to this court, and upon the appeal it was held that the act of 1903 superseded the act of 1897, and that the authority of the county board of oyster land commissioners was superseded by the state oyster commission provided for by the act of 1903; and the judgment of the lower court in that case was affirmed. *State ex rel. Hammond v. Ross*, 39 Wash. 233, 81 Pac. 725.

Thereafter, on July 21, 1905, the applications to purchase were allowed and contracts were issued to the applicants by the commissioner of public lands. On April 1, 1906, the state oyster commission made certain corrections in the Long Island oyster reserve, and ordered and established the reserve by metes and bounds, which reserve did not include the lands in dispute. Maps and descriptions of this reserve were filed in the office of the county auditor of Pacific county. Payments were made by the applicants as provided for in their contracts. These contracts were subsequently assigned to the respondents in this case by approval of the commissioner of public lands, and when the contracts were fully paid, viz., on April 13, 1908, deeds were issued by the commissioner of public lands. to the respondents. In November 1908, this action was begun to set aside these deeds.

Prior to the enactment of the statute of 1903, it was the policy of the state, as declared by numerous acts, to reserve the natural oyster beds of the state from sale, but the act of 1903 made it the duty of the state oyster commission to examine all oyster reserves and all the tide and oyster land belonging to the state, and to survey, plat and establish thereon oyster reserves for the future. Section 6 provided,

"that tide lands within all oyster reserves established and
surveyed and platted by said state oyster commission shall be
forever reserved from sale." Such lands without these re-
serves were not affected thereby, and of course were sub-
ject to sale or lease. The authority of the state oyster com-
mission to establish oyster reserves is not questioned. That
commission did establish an oyster reserve in the vicinity of
the land in question, and excluded these lands from that re-
serve. It is not claimed in the pleadings that the state oyster
commission was influenced by fraud or any other improper
motive in excluding these lands from such reserve, and no
proof was offered of any such fact; but it is claimed that the
applicants, prior to the time when the reserves were created,
had filed applications to purchase the lands in question, and
had made false and fraudulent affidavits that the lands ap-
plied for contained no natural oyster beds, and that the state
oyster commission was induced thereby to exclude the lands
in question from the reserve.

It must be presumed, in the absence of proof to the con-
trary, that the state board did its duty and examined these
lands, investigated the character of the land and the reports
in reference thereto, and in their judgment concluded that the
lands did not contain natural oyster beds. This board was
the agent of the state, clothed with authority to examine tide
lands and establish oyster reserves thereon, and for that pur-
pose had authority to include in such oyster reserves such
lands as in their opinion were proper, and to exclude there-
from such lands as were not proper for such reserves. The
state is bound by that conclusion and cannot now be heard
to say that its agent was mistaken in his judgment, unless
the board acted without authority, or was guilty of fraud
or some other improper motive.

In *Quinby v. Conlan*, 104 U. S. 420, 26 L. Ed. 800, the
supreme court of the United States said:

"It would lead to endless litigation, and be fruitful of evil,
if a supervisory power were vested in the courts over the ac-

tion of the numerous officers of the land department, on mere questions of fact presented for their determination. It is only when those officers have misconstrued the law applicable to the case, as established before the department, and thus have denied to parties rights which, upon a correct construction, would have been conceded to them, or where misrepresentations and fraud have been practiced, necessarily affecting their judgment, that the courts can, in a proper proceeding, interfere and refuse to give effect to their action. On this subject we have repeatedly, and with emphasis expressed our opinion, and the matter should be deemed settled."

See, also, *Steel v. St. Louis Smelting & Refining Co.*, 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226.

It follows, therefore, that the court did not err in refusing to hear evidence to the effect that the lands in question were in fact natural oyster beds, and that the applicants knew these facts at the time they filed their applications for the purchase of the land, because that was the question which was determined by the state oyster commission when the lands were excluded from the reserve. The exclusion of these lands from the reserve made them subject to sale or lease under the rules governing such lands. The authorities cited by the appellant, to the effect that a deed to the lands executed without authority of law is void, are therefore not in point here. The exclusion of the lands from the reserve established their character. The affidavits of the applicants that the lands were not natural oyster beds could not have misled the state oyster commission because, after the affidavits were made, that commission examined the lands as it was required to do and passed its judgment upon the conflicting opinions as to the character of the lands, and determined that the lands were not natural oyster beds, and such judgment is now conclusive.

We find no error in the record. The judgment is therefore affirmed.

RUDKIN, C. J., DUNBAR, CROW, and PARKER, JJ., concur.