[No. 9482. Department One. December 2, 1911.]

THE STATE OF WASHINGTON, *Appellant*, v. O. O. ORT *et al.*, *Respondents.*[1]

PUBLIC LANDS—STATE LANDS—SALE—CONTRACTS—VALIDITY—MISTAKE—DEEDS—STATUTES—CONSTRUCTION. Rem. & Bal. Code, § 6680, providing that any sale or lease of state land made by mistake, or not in accordance with law, shall be void and the contract or lease assumed thereon shall be of no effect and the holder of the contract required to surrender the same, applies only to executory contracts, and not to sales that have been fully executed by delivery of the state deed and full payment of the price.

SAME—STATE DEED—VACATING—CHARACTER OF LAND—MISTAKE OF OFFICERS. In the absence of fraud or connivance of the purchaser, the state cannot maintain an action to set aside its deed of state lands on the ground of mistake of its officers in determining that the character of the lands is agricultural, when in fact it contained more than one million feet of merchantable timber, and under the law could not be sold as agricultural land.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered November 28, 1910, in favor of the defendants, after a trial on the merits, in an action to cancel state deeds. Affirmed.

*The Attorney General*, and *Geo. A. Lee* and *S. H. Kelleran, Assistants*, for appellant.

*Dysart & Ellsbury* and *Forney & Ponder*, for respondents.

FULLERTON, J.—In April, 1906, one O. O. Ort and one Elwood Purcell made separate applications to purchase from

[1]Reported in 119 Pac. 21.

the state two certain adjoining quarter sections of state land, situate in Lewis county. In his application, which was made upon one of the state's forms, Ort stated, in answer to specific questions, that the land was agricultural and pastoral and that he did not consider it valuable as timber land. Purcell stated in his application that the quarter section he sought to buy was all agricultural land, being nearly all swamp and creek bottom, with scattering fir timber, not valuable for timber. On receipt of the applications, the state sent out its inspector to view the lands and make a report thereon. The inspector reported the land to be suitable chiefly for agricultural purposes, having but little timber upon it, which was of no considerable value. The state board having charge of the disposition of the state lands accepted the statements of the applicants and the report as true; and acting thereon, sold the land to the respective applicants at the minimum price allowed by law, and issued deeds on behalf of the state therefor. The procedure followed by the state officers was that required by the then existing laws relating to the sale of state lands of the character these were assumed to be, and on their face were regular and sufficient to pass the state's title in the lands to the purchasers. After acquiring title to the lands, the purchasers conveyed them to the Carlisle-Pennell Lumber Company, a corporation; in fact, it is conceded in the record that the purchases were made in the behalf of that company; it desiring control of the lands as a means of protecting timber lands it owned in the vicinity, and because the only feasible route for a logging road from such timber lands to the market place for logs was over these quarter sections.

The then existing statutes relating to the sale of state lands, however, provided that, whenever the estimated amount of timber of commercial value on any quarter section exceeded one million feet, the timber thereon should be sold separately from the land, under a condition that the same should revert to the state if it was not removed from the land within three

years from the date of purchase. Sometime after the sales of these lands had been consummated, the land officers of the state discovered that each of the quarter sections contained timber of commercial value estimated, to exceed one million feet; and conceiving that the sale thereof without first selling the timber thereon separately was in contravention of the statute, and therefore invalid, caused the present action to be begun to recover the same. In the complaint it is alleged that the inspector who examined the land reported that there was not merchantable timber on the same to exceed one million feet through inadvertence, neglect, or mistake; and that his report, and the applications of Ort and Purcell, were "false and fraudulent in this, that said land contained more than one million feet of merchantable timber, to wit, more than eight million feet of fir, cedar and hemlock." Issue was taken on the allegations of the complaint and a trial had, which resulted in a judgment in favor of the defendants. The state appeals.

On the trial, the state made no attempt to show fraud on the part of the applicants for the land, or on the part of the cruiser who inspected the land on behalf of the state. It contented itself with showing that each quarter section of the land contained at the time of the application and sale more than one million feet of merchantable timber, and that its officers were led to believe the contrary through the inadvertence or mistake .of its inspector.

Section 6680 of Rem. & Bal. Code, provides that any sale or lease of state land made by mistake, or not in accordance with law, or obtained by fraud or misrepresentation, shall be void and the contract of purchase or lease issued thereon shall be of no effect, and that the holder of such contract or lease shall be required to surrender. the same to the commissioner of public lands. It is on this section of the statute that the state bases its claim of right to recover. It contends that these quarter sections were not sold in accordance with law, but by mistake and inadvertence, because they con-

tained at the time of the sale more than one million feet of timber of commercial value, and hence could not be sold under the statute without first selling the timber thereon separately from the land itself.

The evidence convinces us that each of the two quarter sections did have timber of commercial value thereon exceeding one million feet, and that, under the statute, the timber thereon should have been sold first and apart from the land; but we are unable to concede that, for this reason alone, the state may maintain the present action. In each of these instances the purchase price of the land has been paid and deeds have been issued. The state has thus parted with its title to the property; and if it sets aside the sale, it must do so on some equitable principle that authorizes an individual to set aside and declare for naught his executed contracts. The statute relied upon by the state, as we view it, has no application to a case of this kind. It will be noticed that it refers throughout to executory contracts, contracts wherein the state has not parted with its interests, and wherein something remains to be done by each of the parties before the sale is consummated. But here the contract is executed. Each of the parties have dealt at arm's length and have completed the transaction. The state therefore stands in relation to the respondents as one attempting to avoid its executed contract.

That the state may have innocently made a mistake as to the character of the land is no ground for setting aside its sale. It can vacate and set aside its consummated sale of land only in those cases where fraud has been practiced upon its officers by the purchasers or through their connivance. This we held in *State v. Heuston*, 56 Wash. 268, 105 Pac. 474. That was a case where the state sought to set aside a deed executed for certain oyster lands which it was claimed had been sold under a mistake as to the character of the land. But we held that the state was obligated to discover the character of the land prior to the time it made the sale, and that

the finding of its officers to the effect that the land was of a character that could be sold in the manner in which it was sold was conclusive upon the state in the absence of fraud practiced upon it by the purchaser.

Such, also, is the case at bar. Whether this land contained more than one million feet of timber was a question of fact which the state determined adversely to the contention when the sale was made. It cannot now vacate the sale then made on the mere showing that it was mistaken as to the fact. As we say, it must be made to appear that the mistake was brought about by the fraud or connivance of the purchasers.

The judgment of the trial court was right, and it will stand affirmed.

DUNBAR, C. J., GOSE, MOUNT, and PARKER, JJ., concur.