## QUINBY *v.* CONLAN.

1. The verdict of a jury upon an issue which a court of chancery directed them to try is merely advisory.

2. A party lawfully settling upon a portion of a quarter-section of public land, who in good faith complies with the statutory requirements, is entitled as against subsequent settlers to pre-empt that quarter-section, and they derive no right thereto by purchasing the claim of a prior settler, unless, by an actual entry at the proper office, he has a transferable interest in the land.

3. The courts cannot exercise a direct appellate jurisdiction over the rulings of the officers of the Land Department, nor reverse or correct them in a suit between private parties.

4. Where, by misconstruing the law, those officers have withheld from a party his just rights, or misrepresentation and fraud have been practised necessarily affecting their judgment, the courts may in a proper proceeding interfere and refuse to give effect to their action.

ERROR to the Supreme Court of the State of California. The facts are stated in the opinion of the court.

*Mr. Robert H. Bradford* and *Mr. Willis Drummond* for the plaintiff in error.

*Mr. James Coleman* for the defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

This was an action for the possession of certain real property in the county of Los Angeles, in the State of California. The complaint is in the usual form in such actions, according to the system of pleading prevailing in that State, alleging the ownership of the premises by the plaintiff and his right to their possession on a day designated, the wrongful entry thereon by the defendant, and his subsequent occupation thereof, to the plaintiff's damage.

It also alleges the value of the rents and profits during the occupation of the defendant, and prays judgment for restitution of the premises to the plaintiff, for his damages for their occupation, and for the rents and profits lost.

The answer of the defendant denies the several allegations of the complaint, and then sets up in a special count, by way of a cross-complaint, various matters which, as he claims, constitute in equity a good defence to the action and entitle him

to a decree, that he has an equitable right to the premises, and that the plaintiff holds the legal title for him.

Under the system of pleading which obtains in California an equitable defence of this nature, as well as a defence at law, may be set up to an action for the possession of land. In such case the grounds of equitable relief must be set forth separately from the defence at law. The answer presenting them is in the nature of a bill in equity, and must contain all its essential allegations. It must disclose a case which, if established, will justify a decree adjudging that the title be transferred to the defendant, or enjoining the further prosecution of the action. The equitable defence is, therefore, first to be disposed of by the court before the legal remedy is considered. Upon its disposition the necessity of proceeding with the legal action will depend. When that action does proceed, the ordinary rules as to the controlling influence of the legal title will apply. *Estrada* v. *Murphy*, 19 Cal. 248, 273; *Arguello* v. *Edinger*, 10 id. 150.

This statement will explain what otherwise would appear singular in the record, that one judge heard the issues raised by the special answer in the nature of a cross-complaint in equity, and another judge of the same court subsequently tried the issues in the action at law. There was no more impropriety in this hearing of the different issues by different judges, or incongruity with established modes of procedure, than there would have been had the issues in the cross-action been presented in an independent suit.

The grounds put forth for equitable relief consist of alleged erroneous rulings of the Land Department upon two matters, — the possession and improvement of the lands in controversy by the parties claiming a pre-emption right to them; and the time when that portion of the lands in controversy, claimed to be within the limits of a confirmed Mexican grant, was shown, by a survey of the grant and the appropriation of other lands to its satisfaction, to be without them and thus open to settlement and pre-emption.

1. The lands in controversy constitute the west half and the southeast quarter of a quarter-section. The plaintiff, Conlan, entered upon them in February, 1865, occupying a

portion thereof, and declaring his purpose to acquire, as a settler, a pre-emption right to them. The township was surveyed by the authorities of the United States in February, 1868, and the plat filed in the proper land-office in April following. In May, 1868, Conlan filed his declaratory statement in the form required by law, claiming the quarter-section as a pre-emptor. In May, 1869, four years after Conlan's settlement, the defendant, Quinby, settled upon the quarter-section, occupying a portion thereof, declaring his intention to acquire, as a settler, a pre-emptive right to the land, and in November, 1871, he filed his declaratory statement claiming it as a pre-emptor. Previously to his possession various parties had occupied portions of the section, and had conveyed to him whatever interest they held. It would seem from the answer and the frequent reference to the prior occupation of these parties, that it was supposed that this fact in some way increased the equity of his possession and gave him a better pre-emptive right to the lands than that claimed by the plaintiff. But to this position there are two answers: 1st, It does not appear that the grantors of the defendant ever contemplated the acquisition of a pre-emptive right to the lands by their settlement; and, 2d, The act of Congress forbids the sale of pre-emptive rights to the public lands acquired by settlement and improvement. The general pre-emption law declares that all transfers and assignments of rights thus obtained prior to the issuing of the patent shall be null and void. This court held — looking at the purpose of the prohibition — that it did not forbid the sale of the land after the entry was effected, that is, after the right to a patent had become vested, but did apply to all prior transfers. The policy of preventing speculation through the instrumentality of temporary settlers would otherwise be defeated. *Myers* v. *Croft*, 13 Wall. 291.

The claim of the defendant to a right of pre-emption stands, therefore, in no better plight than if there had been no prior occupant of the lands. His own settlement can alone be considered, and that dates, as already said, from May, 1869. He had no claim to the lands when the plaintiff settled upon them, and he acquired none by his purchase of parties who had previously occupied them.

He must also be considered as settling upon them with notice of the plaintiff's prior claim by his declaratory statement filed in the land-office the year before. The plaintiff could not, it is true, have asserted a pre-emptive right to the whole quarter-section as against parties at the time of his settlement in the occupation of a portion of them. Had such parties followed up their occupation and improvement by a declaratory statement when the public surveys were extended over the lands, the case would have been different. A settlement cannot be made upon public land already occupied; as against existing occupants, the settlement of another is ineffectual to establish a pre-emptive right. Such is the purport of our decisions in *Atherton* v. *Fowler*, 96 U. S. 513, and *Hosmer* v. *Wallace*, 97 id. 575.

But a settlement upon a portion of a quarter-section, and making the improvements required by law, will sustain a pre-emptive claim to the whole quarter-section as against subsequent settlers; and such subsequent settlement is not improved, or in any respect rendered more efficacious, by the fact of purchase from earlier occupants. The settlement which the law of Congress will recognize — except where the claim is made by a widow or heirs of a deceased settler — must be personal to the settler, and not that of others who may have conveyed to him.

2. As to the time when the portion of the land in controversy, originally claimed to be within the boundaries of a Mexican grant, was, by the survey of the grant, and the appropriation of other lands to its satisfaction, excluded from them, and thus became open to settlement and pre-emption, only a few words are necessary.

It does not clearly appear from the record what portion of the land in controversy was covered by the claim under the Mexican grant. It would seem, from the complaint, to have been the southeast quarter of the quarter-section; but it is not material. The court found that the grant was surveyed in January or February, 1868, under the act of Congress of July 3, 1866, c. 219, entitled "An Act to quiet land-titles in California;" that such survey was finally approved, and a patent issued upon it; and that the land in controversy was not in-

cluded within it, but " was public land and subject to pre-emption " at the time the plaintiff filed his declaratory statement. The jury, it is true, found, generally, the reverse of this, — that the land was claimed to be within the boundaries of the grant when the declaratory statement was filed. Hence it is contended that the approval of the survey must be considered as subsequently given. It is also contended that a similar conclusion must follow from the period, required by the act of July 1, 1864, for the publication of notice of the survey of a confirmed Mexican grant, before it could be forwarded to the land-office at Washington for approval. But to this argument or assumption there is a satisfactory answer. If there be in an equity case — and so far as the issues upon the cross-complaint are concerned they are to be treated as arising in a proceeding of that character — a conflict between the finding of the court and that of the jury, the former prevails. The finding of the jury is only advisory, and the court may disregard it, and follow its own judgment upon the evidence. *Basey* v. *Gallagher,* 20 Wall. 670, 680.

The survey in the case was made under the eighth section of the act of 1866, and was not subject to the provisions of the act of 1864, requiring publication of it before approval by the Commissioner of the General Land-Office. The statute of 1866 declares that in cases where no request is made within ten months after its passage, or within that period after any subseqent final confirmation, for a survey of a claim under a confirmed Mexican grant, pursuant to sects. 6 and 7 of the act of 1864, the surveyor-general of the United States for California shall cause the line of the public surveys to be extended over the land, and shall set off, in full satisfaction of the grant, and according to the lines of the public surveys, the quantity confirmed, and that the land not included in the grant thus set off by him shall be subject to the general laws of the United States. The survey by that officer of the grant, and the application of land to its satisfaction, as thus prescribed, could undoubtedly have been disapproved by the Commissioner of the General Land-Office, and, had their correctness been contested, they might have been treated as inoperative until approved. But the approval by that officer,

when given, took effect by relation as of the date when the survey and appropriation were made. They must be held valid from that time, so as to protect proceedings taken in accordance with them.

There was, therefore, nothing in the showing made by the defendant to justify the court below in granting the relief prayed, even if we were to take into consideration the facts stated as grounds of relief.

But independently of this conclusion there is a general answer to the alleged erroneous rulings of the officers of the Land Department as grounds for the interference of the court. Those rulings were upon mere matters of fact, or upon mixed questions of law and fact, which were properly cognizable and determinable by the officers of that department.

The laws of the United States prescribe with particularity the manner in which portions of the public domain may be acquired by settlers. They require personal settlement upon the lands desired and their inhabitation and improvement, and a declaration of the settler's acts and purposes to be made in the proper office of the district, within a limited time after the public surveys have been extended over the lands. By them a land department has been created to supervise all the various steps required for the acquisition of the title of the government. Its officers are required to receive, consider, and pass upon the proofs furnished as to the alleged settlements upon the lands, and their improvement, when pre-emption rights are claimed, and, in case of conflicting claims to the same tract, to hear the contesting parties. The proofs offered in compliance with the law are to be presented, in the first instance, to the officers of the district where the land is situated, and from their decision an appeal lies to the Commissioner of the General Land-Office, and from him to the Secretary of the Interior. For mere errors of judgment as to the weight of evidence on these subjects, by any of the subordinate officers, the only remedy is by an appeal to his superior of the department. The courts cannot exercise any direct appellate jurisdiction over the rulings of those officers or of their superior in the department in such matters, nor can they reverse or correct them in a collateral proceeding between private parties.

In this case the allegation that false and fraudulent repre-sentations, as to the settlement of the plaintiff, were made to the officers of the Land Department is negatived by the finding of the court. It would lead to endless litigation, and be fruitful of evil, if a supervisory power were vested in the courts over the action of the numerous officers of the Land Department, on mere questions of fact presented for their determination. It is only when those officers have misconstrued the law applicable to the case, as established before the department, and thus have denied to parties rights which, upon a correct construction, would have been conceded to them, or where misrepresentations and fraud have been practised, necessarily affecting their judgment, that the courts can, in a proper proceeding, interfere and refuse to give effect to their action. On this subject we have repeatedly and with emphasis expressed our opinion, and the matter should be deemed settled. *Johnson* v. *Towsley*, 13 Wall. 72; *Shepley* v. *Cowan*, 91 U. S. 330–340; *Moore* v. *Robbins*, 96 id. 530.

And we may also add, in this connection, that the misconstruction of the law by the officers of the department, which will authorize the interference of the court, must be clearly manifest, and not alleged upon a possible finding of the facts from the evidence different from that reached by them. And where fraud and misrepresentations are relied upon as grounds of interference by the court, they should be stated with such fulness and particularity as to show that they must necessarily have affected the action of the officers of the department. Mere general allegations of fraud and misrepresentations will not suffice. *United States* v. *Atherton*, 102 U. S. 372.

In the present case the respective claims of the parties to a pre-emptive right to the land in controversy, from their settlement and improvements, had been the subject of earnest contestation before the officers of the Land Department, and a decision in favor of the plaintiff was finally rendered by the Secretary of the Interior. And the question whether the land in controversy had been so freed from its reservation under the Mexican grant as to be open to settlement and pre-emption depended upon matters disclosed by the record of proceedings

in the Land Department, namely, that the public surveys had been extended over the land, and that other lands had been appropriated to the satisfaction of the grant.

*Judgment affirmed.*