*France & Rogers*, for plaintiff in error.

*E. Miles*, for defendant in error.

---

## STEELE *et al. v.* ST. LOUIS SMELTING AND REFINING COMPANY.

(*Supreme Court of the United States, October Term, 1882—Error to the Circuit Court, District of Colorado.*)

1. TOWN SITE NOT EXEMPT FROM MINERAL LOCATION. Land embraced within a town site, when unoccupied, is not exempt from location and sale for mining purposes. Whenever mines are found in lands belonging to the United States, whether within or without town sites, they may be claimed and worked, provided existing rights of others, from prior occupation, are not interfered with.

2. LAND DEPARTMENT TO DETERMINE. Whether there are rights interfered with, which should preclude the location of the mineral claim, and the issual of a patent therefor, is, when not subjected under the law of Congress to local tribunals, a matter properly cognizable by the Land Department when application is made for patent. This Department must necessarily consider and pass upon the character of the land, the qualifications of the applicant, the acts he has performed, and whether the land is of a class open for sale.

3. ACTION OF DEPARTMENT NOT TO BE QUESTIONED COLLATERALLY. The judgment of the Department upon these matters is that of a special tribunal, and is unassailable, except by direct proceedings for its annulment or limitation.

4. EJECTMENT—LEGAL TITLE MUST PREVAIL IN. In ejectment the legal title must prevail. The patent of the United States passes that title. Whoever holds it must recover against those who have only unrealized hopes to obtain it, or claims which it is the exclusive province of Courts of Equity to enforce. However great such equities may be, they constitute no defense in an action at law based upon the patent—provided the Land Department had jurisdiction to issue the patent. An unauthorized patent would be void.

5. FRAUD, BRIBERY, ETC., IN SECURING PATENT, NOT AVAILABLE COL-
LATERALLY.  The charge that fraud, bribery, etc., were used to influence
the officers of the Land Department in securing the patent is not admissi-
ble as a ground of defense in an action at law.  The validity of a patent
cannot be assailed collaterally on these grounds any more than can a
judgment of a Court.

6. ESTOPPEL—NOT AVAILABLE TO ONE WHO ACTS WITHOUT RIGHT.
The statutory doctrine that one should be estopped from asserting a right
to property upon which he stands by and sees another erect improve-
ments, cannot be invoked by one who, at the time the improvements were
made, was acquainted with the true character of his own title, or with the
fact that he had none.

Mr. JUSTICE FIELD delivered the opinion of the Court.

This was an action by the St. Louis Smelting and Refining
Company, a corporation created under the laws of Missouri,
against Steele and others, to recover the possession of certain
real property in the City of Leadville, Colorado.  It was com-
menced in one of the Courts of the State, and, on motion of
the defendants, was removed to the Circuit Court of the United
States.  The complaint is in the usual form in actions for the
recovery of land, according to the practice prevailing in Col-
orado.  It alleges that the plaintiff was duly incorporated,
with power to purchase and hold real estate; that it is the
owner in fee and entitled to the possession of the premises
mentioned, which are described, and that the defendants
wrongfully withhold them from the plaintiff, to its damage of
one thousand dollars.  The plaintiff, therefore, prays judgment
for the possession of the premises and for the damages men-
tioned.

The defendants filed an answer to the complaint, which
appears to have been amended several times, the questions
presented for our consideration having arisen upon the de-
murrer to the third amended answer.  That answer denied
the material allegations of the complaint, and set up several
special defenses and counter-claim for value of the improve-
ments put on the premises.  The plaintiff demurred to the de-
fenses and to the counter-claim.  The demurrer was sustained
to the defenses and overruled to the counter-claim.  The de-
fendants elected to stand on their defenses, and final judgment
was accordingly entered on the demurrer for the plaintiff for

the possession of the premises.  To review this judgment the case is brought by the defendants to this Court.

The amended answer averred that the defendants were the owners of the land in controversy "by superiority of possessory title and priority of actual possession" of the premises as part of a town site on the public domain of the United States, located and occupied since June, 1860; that the title of the plaintiff was derived from one Thomas Starr, to whom a patent was issued by the United States, bearing date on the 29th of March, 1879, embracing the premises in controversy; and the special defenses set up were that the patent was void, that fraud, bribery, perjury, and subornation of perjury were used to obtain it; and that the patentee was estopped, by his conduct, from asserting title to the premises.

The patent, which is subsequently stated to be a mineral patent, by which is meant that it was issued upon a claim for mineral land, is averred to be void on these grounds:  That the land which it embraces was part of the town site of Leadville when the claim originated, and was thus reserved for sale by the laws of Congress; that the land included in the town site was neither mineral nor agricultural; and that the patentee, Starr, was not a citizen of the United States, and had not declared his intention to become one when the patent was issued.  These grounds are accompanied with a detail of the facts upon which they are founded, but they are sufficiently stated for the disposition of the questions arising upon them.

Land embraced within a town site on the public domain, when unoccupied, is not exempt from location and sale for mining purposes; its exemption is only from settlement and sale, under the pre-emption laws of the United States.  Some of the most valuable mines in the country are within the limits of incorporated cities, which have grown up on what was, on its first settlement, part of the public domain, and many of such mines were located and patented after a regular municipal government had been established.  Such is the case with some of the famous mines of Virginia City, in Nevada.  Indeed, the discovery of a rich mine in any quarter is usually followed by a large settlement in its immediate neighborhood, and the consequent organization of some form of local govern-

ment for the protection of its members. Exploration in the vicinity for other mines is pushed in such case by new comers with vigor, and is often rewarded with the discovery of valuable claims. To such claims, though within the limits of what may be termed the site of the settlement or town, the miner acquires as good a right as though his discovery was in a wilderness, removed from all settlements, and he is equally entitled to a patent for them.

It is the policy of the country to encourage the development of its mineral resources. The act of July 26, 1866, declared that all mineral deposits on lands belonging to the United States were free and open to exploration, and the lands in which they are found to occupation and purchase by citizens of the United States, and those who had declared their intention to become such, subject to regulations prescribed by law and to the rules and customs of miners in their several mining districts, so far as the same were applicable and not inconsistent with the laws of the United States. This declaration of the freedom of mining lands to exploration and occupation was repeated in the act of Congress of May 10, 1872, and is contained in the Revised Statutes (Sec. 2319). Both acts provided for the acquisition of title, by patent, to mineral lands— the first act, to such as constituted lode claims; the second, to such as constituted placer claims. The acts of Congress relating to town sites recognize the possession of mining claims within their limits, and forbid the acquisition of any mine of gold, silver, cinnabar or copper within them under proceedings by which title to other lands there situated is secured, thus leaving the mineral deposits within town sites open to exploration, and the land in which they are found to occupation and purchase, in the same manner as such deposits are elsewhere explored and possessed, and the lands containing them are acquired. R. S., Secs. 2386, 2392.

Whenever, therefore, mines are found in lands belonging to the United States, whether within or without town sites, they may be claimed and worked, provided existing rights of others, from prior occupation, are not interfered with; whether there are rights thus interfered with, which should preclude the location of the miner, and the issue of a patent to him or his

successor in interest, is, when not subjected under the law of Congress to the local tribunals, a matter properly cognizable by the Land Department, when application is made to it for a patent; and the inquiry thus prosecuted must necessarily involve a consideration of the character of the land to which title is sought, whether it be mineral, for which a patent may issue, or agricultural, for which a patent should be withheld, and also to the citizenship of the applicant.

We have so often had occasion to speak of the Land Department, the object of its creation, and the powers it possesses in the alienation by patent of portions of the public lands, that it creates an unpleasant surprise to find that counsel, in discussing the effect to be given to the action of that Department, overlook our decisions on the subject. That Department, as we have repeatedly said, was established to supervise the various proceedings whereby a conveyance of the title from the United States to portions of the public domain is obtained, and to see that the requirements of different acts of Congress are fully complied with. Necessarily, therefore, it must consider and pass upon the qualifications of the applicant; the acts he has performed to secure the title; the nature of the land, and whether it is of the class which is open to sale. Its judgment upon these matters is that of a special tribunal, and is unassailable, except by direct proceedings for its annulment or limitation. Such has been the uniform language of this Court in repeated decisions.

In *Johnson* v. *Towsley*, the effect of the action of that Department was the subject of special consideration. And the Court applied the general doctrine, "that, when the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive upon all others;" and said, speaking by Mr. Justice Miller:

"That the action of the Land Office in issuing a patent for any of the public land, subject to sale by pre-emption or otherwise, is conclusive of the legal title, must be admitted under the principle above stated, and in all courts and in all forms of judicial proceedings, where this title must control, either by reason of the limited powers of the Court or the es-

30

sential character of the proceedings, no inquiry can be permitted into the circumstances under which it was obtained." 13 Wall., 83, 84.

In *French* v. *Ryan*, a patent had been issued to the State of Missouri for swamp and overflowed land, under the act of September 28, 1850. In an action of ejectment by a party claiming title under a grant to a railroad company, which would have carried the title if the land were not swamp and overflowed, parol testimony was offered to prove that it was not land of that character, and thus to impeach the validity of the patent. The Court below held that the patent concluded the question, and rejected the testimony. The case being brought here the ruling was sustained. This Court, speaking through Mr. Justice Miller, said:

" We are of the opinion that in this action of law it would be a departure from sound principle, and contrary to well considered judgment in this Court, and in others of high authority, to permit the validity of the patent to the State to be subjected to the test of a verdict of a jury on such oral testimony as might be brought before it. It would be substituting the jury, or the Court sitting as a jury, for the tribunal which Congress had provided to determine the question, and would be making a patent of the United States a cheap and unstable reliance as a title of lands which it is purported to convey." 93 U. S., 172.

In *Quinley* v. *Conlan*, decided at the last term, we said:

" It would lead to endless litigation, and be fruitful of evil, if a supervising power were vested in the Courts over the action of the numerous officers of the Land Department, on mere questions of fact presented for their determination. It is only when these officers have misconstrued the law applicable to the case, as established before the Department, and thus have denied to parties rights which, upon a correct construction, would have been conceded to them, or where misrepresentations and fraud have been practiced, necessarily affecting their judgment, that the Courts can, in a proper proceeding, interfere and refuse to give effect to their action. On this subject we have repeatedly, and with emphasis, expressed our opinion, and the matter should be deemed settled." 104 U. S., 426; see also *Vance* v. *Burbank*, 101 U. S., 514.

It is among the elementary principles of the law, that in actions of ejectment the legal title must prevail. The patent of the United States passes that title. Whoever holds it must

recover against those who have only unrealized hopes to obtain it, or claims which it is the exclusive province of a Court of equity to enforce. However great these may be, they constitute no defense in an action at law based upon the patent. That instrument must first be got out of the way, or its enforcement enjoined before others having mere equitable rights can gain or hold possession of the land it covers. This is so well established, so completely imbedded in the law of ejectment, that no one ought to be misled by any argument to the contrary. It need hardly be said that we are here speaking of a patent issued in a case where the Land Department had jurisdiction to act, the lands forming part of the public domain, and the law having provided for their sale. If they never were the property of the United States, or if no legislation authorized their sale, the patent would be inoperative to pass the title, and objection could be taken to it on these grounds at any time and in any form of action. In that respect the patent would be like the deed of an individual, which would be inoperative, if he never owned the property, or had previously conveyed it, or had dedicated it to uses which precluded its sale. And, of course, in both cases it is always open to show that the instrument was never executed by the parties whose signatures are attached to it, but is a simulated document. Where ejectment is founded upon either of these instruments—the patent of the Government or the deed of the individual—the question being, which of the parties has the legal title, it is irrelevant to introduce evidence that one of them ought to have had it, and might be able to get it, by a proceeding in some other tribunal or in some other form of action.

As to the allegations that fraud, bribery, perjury and subornation of perjury were used to obtain the patent to Starr, only a few words need be said. The bribery and subornation of perjury are alleged to have been committed by him in inducing parties to make false affidavits respecting the claim patented, to be laid before the Land Department; and the perjury alleged consisted in his own affidavit as to his citizenship, the possession and working, by himself or grantors, of the claim for which the patent was issued, and the absence of a town site,

embracing the land, and of improvements thereon. The fraud alleged is not a specific charge by itself, but is made in connection with the affidavit of the patentee, and his procurement of the false affidavits of others. The charges amount to this: That false and perjured testimony was used to influence the officers of the Land Department. There is no allegation of improper conduct on the part of those officers. The answer to this ground of defense is, that it is not admissible in an action at law. The validity of a patent of the Government cannot be assailed collaterally, because false and perjured testimony may have been used to secure it, any more than a judgment of a Court of justice can be assailed collaterally on like ground. If a judgment has been obtained by such means, the remedy of the aggrieved party is to apply for a new trial, or to take an appeal to a higher Court; and if the testimony was accompanied with acts which prevented him from presenting to the Court the merits of his case, or by which the jurisdiction of the Court was imposed upon, he may also institute some direct proceeding to reach the judgment. (*United States* v. *Flint*, 4 Sawyer, 42; *United States* v. *Throckmorton*, 98 U. S., 61; *Vance* v. *Burbank*, 101 U. S., 514.) Until set aside or enjoined, it must, of course, stand against a collateral attack with the efficacy attending judgments founded upon unimpeachable evidence. So with a patent for land of the United States, which is the result of the judgment upon the right of the patentee by that department of the Government to which the ailenation of the public lands is confided. the remedy of the aggrieved party must be sought by him in a Court of equity, if he possesses such an equitable right to the premises as would give him the title if the patent were out of the way. If he occupy, with respect to the land, no such position as this, he can only apply to the officers of the Government to take measures in his name to vacate the patent or limit its operation. It cannot be vacated or limited in proceedings where it comes collaterally in question. It cannot be vacated or limited by the officers themselves; their power over the land is ended when the patent is issued and placed on the records of the Department. This can be accomplished only by regular judicial proceedings, taken in the name of the Government for that special purpose.

It does not follow that the officers of the Government would take such proceedings, even if the charges of fraud and of the use of false testimony in obtaining the patent were true. They might be satisfied that the patentee' was entitled to the patent upon other testimony, or, that further proceedings would result in a similar conclusion, and that, therefore, it would be unwise to reopen the matter. In any event, whether the officers of the Government have been misled by the testimony produced before them or not, the conclusions reached by them are not to be submitted for consideration to every jury before which the patent may be offered in evidence on the trial of an action. As we said in the case of *Smelting Company* v. *Kemp:*

"It is this unassailable character (of the patent) which gives its chief, indeed, its only value, as a means of quieting its possessor in the enjoyment of the lands it embraces. If intruders upon them' could compel him, in every suit for possession, to establish the validity of the action of the Land Department, and the correctness of its ruling upon matters submitted to it, the patent, instead of being a means of peace and security, would subject his rights to constant and ruinous litigation. He would recover one portion of his land if the jury were satisfied that the evidence produced justified the action of that Department, and lose another portion, the title whereto rests upon the same facts, because another jury came to a different conclusion. So his rights in different suits upon the same patent would be determined, not by its efficacy as a conveyance of the Government, but according to the fluctuating prejudices of different jurymen, or their varying capacities to weigh evidence." 104 United States, 641.

It remains to notice the defense of estoppel. The answer of the defendants alleges that Starr, the patentee, was living in Leadville from 1860 until the patent was issued to him in 1879, and was cognizant of the improvements and of the large sums of money expended on the premises; that he and his grantors fraudulently remained quiet in respect to their ownership of mining claims there, and from August, 1870, to the time of their application for a patent, never made known, either to the city of Leadville or to the defendants, that he or they claimed a right to any portion of the land; that other parties who made similar claims, and united with him in se-

curing the patent, also stood by and remained quiet; that the defendants expended the sum of $5,000 in making improvements on the premises in controversy, under the claim that they constituted part of a town site on the public domain; that there was no mining on the land, and that no notice was given that would lead the defendants to suppose that there had been any mineral location made by him and his associates; that Starr published the notice of his application for a patent only in a weekly paper of Leadville, and that the description of the consolidated claim was so defective, that only a skilled engineer could tell where the land was situated; and that, after the defendants had discovered that the notice of the patent embraced lands in the city, they were assured that they should not be disturbed in their possessions, and that only a nominal sum would be demanded from them, not exceeding $25 a lot, and that, relying upon said assurance, the defendants continued making improvements.

These allegations are very far from establishing such an equity in the defendants as to estop the patentee and those claiming under him from asserting the legal title to the premises. These matters could not operate to estop the Government in any disposition of the land it might choose to make. Its power of alienation could not be affected until the defendants had performed all the acts required by law, and acquired a vested interest in the land; and it is not pretended that they took any steps to secure such an interest. Whatever right, therefore, the Government possessed to use or dispose of the property, freed from any claim of the defendants, it could pass to its grantee.

The principle invoked is, that one should be estopped from asserting a right to property upon which he has, by his conduct, misled another, who supposed himself to be the owner, to make expenditures. It is often applied where one owning an estate stands by and sees another erect improvements upon it in the belief that he has the title, or an interest in it, and does not interfere to prevent the work or inform the party of his own title. There is in such conduct a manifest intention to deceive, or such gross negligence as to amount to constructive fraud. The owner, therefore, in such a case, will not be

permitted afterwards to assert his title and recover the property, at least without making compensation for the improvements.     But this salutary principle cannot be invoked by one who, at the time the improvements were made, was acquainted with the true character of his own title, or with the fact that he had none.     (*Brant* v. *Virginia Coal and Iron Company*, 93 United States, 327; *Henshaw* v. *Bissell*, 18 Wall., 271).     It will not be pretended that the defendants did not understand all about the title to the lands; they knew that it was vested in the United States, and we must presume that the patentee gave notice of his purpose to acquire it, such as the law required.     The mode and manner of obtaining a patent for mining lands are minutely prescribed by the acts of Congress. Among other things, the applicant' must file his application under them, in the proper Land Office, showing a compliance with the laws, together with a plat and the field notes of his claim or claims in common, made by or under the directions of the Surveyor-General of the United States, showing their boundaries; and he must, also, and previously to the filing of the application, post a copy of the plat, with a notice of his intended application, in a conspicuous place on the land.     It is a conclusion, from the issuing of the patent, that this requirement was complied with, and, therefore, it cannot be said here that the patentee did not give notice of his purpose.     This notice, as justly observed by the Court below, was, of itself, a warning to all who were upon the land, and were about to erect improvements upon it, that the patentee was applying for a patent, and thus seeking to obtain the title; and the answer admits that the defendants did ascertain the fact of the application, for they aver a subsequent promise of the applicant to give them a title when the patent was acquired.     Under these circumstances the alleged estoppel, like the other matters urged to defeat the action, must fail.

Though the various matters of fraud, perjury, and subornation of perjury, alleged as a defense, are to be taken as true for the purpose of this decision, they are not to be taken as true for any other purpose.     What we decide is that, if true they are not available in this form of action, and that any relief against the patent founded upon them must be sought in another way, and by a direct proceeding.

We have thus considered the propositions of the law presented by the record, and the matters urged by counsel in his argument, so far as we have deemed them entitled to notice. They disclose nothing which would justify interference with the action of the Court below. Its judgment, therefore, is affirmed.

True copy.

Attest:                                    JAMES H. McKENNEY,

*Clerk of the Supreme Court of the United States.*