[No. 10018.  Department One.  July 20, 1912.]

GREAT NORTHERN RAILWAY COMPANY, *Appellant*, v.
JAMES A. HOWER *et al.*, *Respondents.*[1]

PUBLIC LANDS — DECISIONS OF DEPARTMENT — CONCLUSIVENESS—
HOMESTEAD ENTRY—UNSURVEYED LANDS—MISTAKE.  Under the rule
that decisions of the land department upon questions of fact are
conclusive, and that courts of equity will relieve only against fraud
or mistake or erroneous conclusions of law, the decision of the land
department that a settler on unsurveyed public lands was acting
in good faith and constructively in possession of the tract upon
which he supposed his dwelling to be located is conclusive and con-
trolling, where there is no contention of fraud or mistake, his
notice was posted on the tract, he acted in good faith, and the con-
testing railroad company sustained no actual loss other than it
would have sustained had the land upon which the improvements
were actually located been awarded to the settler.

Appeal from a judgment of the superior court for Sno-
homish county, Bell, J., entered July 5, 1911, dismissing
an action to quiet title, upon sustaining a demurrer to the
complaint.  Affirmed.

*F. V. Brown* and *F. G. Dorety*, for appellant.

*J. A. Coleman*, for respondents.

CROW, J.—Action by Great Northern Railway Company,
a corporation, against James A. Hower and others, to quiet
title to land.  Defendants' demurrer was sustained to the
amended complaint.  Thereupon plaintiff declined to plead
further, and appealed from an order of dismissal.

The amended complaint is too voluminous to be here set
forth.  The appellant railway company, as successor of
St. Paul, Minneapolis & Manitoba Railway Company, a cor-
poration, claims the land under act of Congress of August
5, 1892, 27 Stats. at Large, p. 390, chap. 382.  The amended
complaint alleges that on October 20, 1892, the St. Paul,
Minneapolis & Manitoba Railway Company released certain

[1]Reported in 125 Pac. 159.

lands in North Dakota; that on March 24, 1894, it selected
in lieu thereof under said act of Congress a certain tract of
unsurveyed land in King county, Washington, which when
surveyed was found to be the northeast quarter of section 2,
township 27, north, of range 10, east of the Willamette Me-
ridian; that it filed in the United States land office at Seattle
a list describing the land with reasonable certainty; that the
land so selected was not reserved; that no adverse claim had
attached or been initiated thereto; that it was thereafter sur-
veyed, the plat of survey being filed in the United States
land office at Seattle on April 11, 1899; that, when the plat
was filed, the selected land was found to be the northeast quar-
ter of section 2, township 27, north of range 10 east, W. M.;
and that on April 11, 1899, appellant's grantor filed a sup-
plemental selection which redescribed the land so as to make
the same conform to the lines and subdivisions of the govern-
ment survey.   The amended complaint further states that,
on or about April 18, 1899, one Melvin J. Carter, respond-
ents' grantor, filed in the United States land office, at Se-
attle, his written application to enter the same quarter sec-
tion under the homestead laws, claiming he had settled on
the land on December 1, 1893; that after various hearings
and appeals, the land was awarded and patented to Carter
by the decision of the secretary of the interior; that the land
officers committed error of law in awarding the land to Car-
ter, as he had made no actual settlement in compliance with
the homestead laws.   Prior to the hearing of the demurrer,
the following written stipulation was filed:

"In passing upon the demurrer to the amended complaint,
it is stipulated that the court may consider the decisions of
the land department, referred to in the amended complaint,
namely:

"The decision of the register and receiver of August 28,
1903.

"The decision of the acting assistant commissioner of
March 23, 1904.

"The decision of the register and receiver of January 21, 1905.

"The decision of the acting commissioner of June 30, 1905.

"The decision of the secretary of the interior of November 23, 1905, and that the annexed are true copies of said decisions."

Copies of these decisions are attached to the stipulation. From the allegations of the amended complaint and these decisions, it appears that the following facts relative to Carter's settlement, improvements, and claim were found by the land department officials: that. Carter's house was located on lot 2, a portion of the northwest quarter of the section; that, prior to 1893, one Doolin made settlement on what is now known at lot 2; that a short distance below him one Moe also made a settlement; that Melvin J. Carter and his father, E. B. Carter, went upon the land on September 19, 1893, Melvin J. Carter buying Doolin's cabin and E. B. Carter buying Moe's cabin; that each built a new cabin; that Melvin J. Carter claimed what he supposed was the northeast quarter of the section; that about a year later, with the assistance of his father, he constructed a trail across the section and up Trout creek on the northeast quarter, for the purpose of reaching different places on the claim; that he built a barn and stable which he used for storing supplies; that he posted on the north section line a homestead notice; that the trail, barn, and notice, since the survey, are shown to have been on the northeast quarter, but that his house and most of the cultivated ground are on lot 2 in the northwest quarter, the house being about one quarter of a mile west of the quarter section line; that lot 2 on which both Carters were living has been patented to the father E. B. Carter without protest from Melvin J. Carter; that lot 1 lies between lot 2 and the northeast quarter, east of the former and west of the latter; that the railway company had selected the entire section; that Melvin J. Carter made no protest against the company's claim to the north-

west quarter, but allowed it to obtain a patent for lot 1 thereof; that neither Melvin J. Carter nor his father thought they were interfering one with the other; that Melvin J. Carter was claiming to the east from his home, while his father was claiming towards the south; that Melvin had acted in good faith; that he offered to amend his application so as to include the land upon which the government should finally determine his improvements were actually located, and drop from either the eastern or southerly boundary of his claim sufficient land to enable him to include the tracts upon which his improvements were made; that this could not be done as a patent had been issued to the railway company for lot 1; that the northeast quarter should be patented to Melvin J. Carter; and that the railway company, having selected the entire section, would lose no more land than it would have lost had Carter applied for lot 1 with a sufficient portion of the northeast quarter to make one hundred and sixty acres. In the opinion of the secretary of the interior, addressed to the commissioner of the general land office, he said:

"As Carter tendered his homestead application directly after the filing of the plat, presumably he still believed that his house was located on the northeast quarter. As he is shown to have been a *bona fide* homestead settler upon unsurveyed land at the time the railway company made selection thereof, and subsequently has made a good compliance with the law as to residence and improvements, the department is of opinion that his application for the tract in question should be allowed. As the railway company made selection of the entire section, it loses no more land than it would if Carter had applied for said lot 1 with sufficient in the northeast quarter to make 160 acres. Your office decision holding in favor of Carter is affirmed and upon his perfecting his application for said northeast quarter of Sec. 2, T. 27 N., R. 10 E., the railway company's selection thereof will be cancelled."

The theory upon which the patent was awarded to Melvin J. Carter was that he had acted in good faith; that his settle-

ment was prior in date to the selection made by the railway company; that the land was then unsurveyed, and that constructively his improvements and settlement were made on the northeast quarter.

Appellant concedes that the facts found by officers of the land department bearing upon the good faith of Melvin J. Carter cannot be reviewed in this action, but insists that their conclusions of law, if erroneous, may and should be here corrected. The doctrine is well established that the decisions of officials of the land department upon questions of fact, although reviewable upon appeals within the department itself, are conclusive on all courts of justice, in the absence of fraud or mistake; but that courts of equity have jurisdiction to correct mistakes, to relieve against fraud, or to afford a remedy when it becomes apparent that the officials of the land department have, by erroneous conclusions of law, given to one claimant public land which upon the undisputed facts should have been patented to another. *Shepley v. Cowan*, 91 U. S. 330; *Moors v. Robbins*, 96 U. S. 530; *Quinby v. Conlan*, 104 U. S. 420; *Baldwin v. Stark*, 107 U. S. 463; *Gonzales v. French*, 164 U. S. 338; *Wiseman v. Eastman*, 21 Wash. 163, 57 Pac. 398; *Grays Harbor Co. v. Drumm*, 23 Wash. 706, 63 Pac. 530.

There is no contention that fraud or mistake has been pleaded in this action. The officers of the land department found that Melvin J. Carter was residing on the land before the railway company made its selection; that, although his dwelling house was on an adjoining tract his notice was posted on the northeast quarter; that a portion of his improvements were thereon; that he acted in good faith; and that the railway company has sustained no actual loss other than it would sustain had the land upon which his improvements were actually located been awarded him. These findings are not and cannot be questioned. The United States land department has repeatedly held that a settler constructively residing upon lands claimed by him should be

permitted to acquire the title.  *Talkington's Heirs v. Hempfling*, 2 Land Dec. 46; *Lewis C. Huling*, 10 Land Dec. 83; *Kendrick v. Doyle*, 12 Land Dec. 67; *Staples v. Richardson*, 16 Land Dec. 248.

Appellant, citing numerous land office decisions, concedes that the residence of a homestead and preemption claimant, not upon his claim, has been frequently held a sufficient compliance with the law; but insists that such decisions are not controlling here, as in each of them the residence involved was only a short distance beyond the line, was moved upon the land as soon as the mistake was discovered, and that in nearly all if not all such cases, there were other substantial improvements on the land claimed.  Appellant calls attention to the fact that in this case Carter's dwelling house was a quarter of a mile distant from the land claimed, and argues that no case heretofore decided has held such a remote residence to have been a sufficient compliance with the requirements of the homestead act.  In most of the cases which appellant has cited the land had been surveyed before the settlement or improvements were made.  Not only was this land unsurveyed, but the facts found and pleaded show that in places it was rough, uneven and difficult of access.  In *Keogle v. Griffith*, 13 Land Dec. 7, one of the cases cited by appellant, it affirmatively appeared that the claimant's improvements were about forty rods from the land entered, yet a patent was awarded.  Upon the facts before us, we conclude the decisions of the land department were controlling.  "The law deals tenderly with one who in good faith goes upon the public lands with a view of making a home thereon."  *Ard v. Brandon*, 156 U. S. 537, 543.  The land was rightfully awarded and patented to respondents' assignor, Melvin J. Carter.  The amended complaint does not state a cause of action.  The judgment is affirmed.

PARKER, CHADWICK, and GOSE, JJ., concur.