# ABBOTT v. PERRY *et al.*

No. 4462.   Opinion Filed May 18, 1915.

(149 Pac. 202.) ·

1.   **INDIANS—Making of Allotment Selections—Conflicting Claims—Decision of Interior Department—Review by Courts.** The laws regulations, and rules of practice of the Interior·Department prescribe with particularity the manner in which Indian allotment selections may be made, and the officers of that department are required to receive, consider, and pass upon the proofs necessary to establish the respective claims, selections, and filings, and in case of conflicting claims to the same tract, to hear and pass upon the testimony of the contesting parties. The proofs offered in compliance with the law and rules of practice are to be presented, in the first instance, to the local officers of the district where the land is situated, and from their decision an appeal lies to the Commissioner of Indian Affairs, and from him to the honorable Secretary of the Interior. For mere errors of judgment as to the weight of evidence on these subjects, by any of the subordinate officers, the only remedy is by an appeal to his immediate superior of that Department. The courts cannot exercise any direct appellate jurisdiction over the rulings of those officers, or of their superior in the Department, in such matters, nor can they reverse or correct them in a collateral proceeding between private parties. It is only when those officers have misconstrued the law applicable to the case, as established by the evidence before the Department, and have thus denied to parties, rights which, upon a. correct construction, would have been conceded to them, or where misrepresentations and fraud have been practiced, necessarily affecting their judgment, that courts can, in proper proceeding, interfere and refuse to give effect to their action.

2.   **INDIANS—Indian Allotment—Agreement to Sell—Presumptions—Speculation.** The act of an applicant, for an Indian allotment selection, in executing and delivering a contract for the sale of the land sought to be filed upon, in case he succeeds in getting said tract, raises a presumption that he is not intending to file on said allotment in good faith, but for speculation, and with the intention to abandon and forfeit his rights to said land.

(Syllabus by Robberts, C.)

*Error from District Court, Tulsa County;*

*L. M. Poe, Judge.*

Action by John H. Abbott against Vinita Perry, contestee, and the Olympus Oil Company, to set aside the decision of the Secretary of the Interior upon a contest of an Indian allotment selection, and to declare a trust. From the judgment, plaintiff brings error. Affirmed.

*W. H. Kornegay,* for plaintiff in error.

*Guy Patten,* for defendants in error.

ROBBERTS, C. From the district court of Tulsa county on petition in error. The case involves the right of allotment selection, and thereby the right of possession and title to the N. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of section 36, township 23 N., range 12 E., in said county.

The plaintiff and defendant Vinita Perry, are citizens and both entitled to allotments of land in Cherokee Nation. The defendant oil company is a corporation and claims to have an oil and gas lease on said land. The plaintiff for his cause of action alleges, in substance, and the record shows, that on the 23d day of August, 1907, Nathan N. Perry appeared at the Cherokee land office, and made application for the land in controversy herein for his minor daughter, Vinita Perry, the defendant herein, and the same was by the Commissioner to the Five Civilized Tribes set apart to her as a part of her allotment selection; that on the 12th day of October, 1907, the plaintiff herein appeared at the same land office and made application to have the land in controversy segregated as a part of his allotment, claiming prior selection, possession, and improvement, whereupon his application was rejected, because of the prior selection and filing by defendant. On the 12th day of October, 1907, the plaintiff filed his contest against the defendant. Notice of contest was served upon

the defendant as required by the rules of practice, and on the 8th day of June, 1909, both parties appeared before the land office and said case was tried before the Commissioner to the Five Civilized Tribes, and decision rendered in favor of defendant and against the plaintiff. The testimony taken at the hearing and also the decision of the Commissioner, is attached to plaintiff's petition in the district court, and made a part thereof. The findings of fact of the Commissioner upon the hearing of said cause, and his conclusions of law and judgment thereon are as follows:

"The evidence in this case shows that the land in controversy was, on the date that contestee filed thereon, a part of a large inclosure which was in the possession and under the control of some person other than any contestant herein, and that the only improvements on said controverted tract was an old dilapidated wire fence running across the east side of said tract. On April 8, 1907, the improvements on the ten-acre tract involved in this contract were appraised under the act of March 2, 1907, as the property of one Dorothy Rattlingourd, a former claimant for intermarriage citizenship in the Cherokee Nation, at nine ($9.00) dollars, and the testimony herein is to the effect that no additional improvements were on said land at the date the contest was filed herein.

"The evidence in this case is practically conclusive as to the contestant's nonpossession of the land in controversy, on the date that contestee filed thereon.

"The contestant himself testified that he was not in possession; that he owned no improvements located thereon, and that he himself had placed no tenant in charge of said land. It does appear, however, that one Dr. J. M. Boling placed a Mr. Walden in charge of this land, and according to Dr. Boling's testimony he placed said Walden in charge of this land as the tenant of contestant.

"It further appears from the evidence herein that some time during the month of October, 1907, evidently subsequent to the institution of this contest, the contestant therein and his wife executed and delivered to said J. M. Boling and Ruth A. Davis, a

contract wherein it was stipulated that should said contestant be successful in his contest for the land in controversy he and his wife were to execute and deliver to the said J. M. Boling and Ruth A. Davis, in consideration of three hundred and forty ($340.00) dollars, a warranty deed conveying to them the land involved in Cherokee allotment contest No. 4913, wherein the said John H. Abbott is also the contestant. It is further stipulated in said contract that the said J. M. Boling, and Ruth A. Davis are to pay all the expenses incurred in the prosecution of these contests.

"It therefore appears that John H. Abbott is nominal contestant only, and that J. M. Boling and Ruth A. Davis are the interested parties in the prosecution of this contest.

"The Department, in its decision rendered March 23, 1908, denying a motion to reconsider a former decision in Chickasaw allotment contest No. 1593, Stidham v. Folsome, said: 'The position of the Department has been for several years that an allottee does not acquire such an interest in the tract set apart to him as will entitle him to alienate the same until the right is perfected in him to receive a certificate of allotment.'

"The land in controversy was originally filed on by the contestee on August 21, 1907, and this contest was instituted October 12, 1907, and no certificate of allotment could be issued to the contestant prior to the final determination of this contest, and it follows, therefore, as a matter of procedure, that the contestant was not entitled to receive a certificate of allotment at the time he executed the contract for the alienation of the land in controversy.

"The Commissioner believes that the contestant should not prevail in this contest for three reasons: First, that the improvements located on the land in controversy on the date of contestee's filing, were not of sufficient value to constitute a segregation of said land; second, that the contestant has failed to establish his ownership of the improvements located on the land in controversy and lawful possession of said land on the date of the contestee's filing; third, that in view of the decision in the Stidham Folsome case above referred to, the act of the contestant in executing and delivering a contract for the sale of the land in controversy, raises a reasonable presumption of his intention to abandon and forfeit his rights in said land."

## Judgment.

"It is therefore ordered and adjudged, that the northeast quarter of the southwest quarter of the northwest quarter of section 36, township 22 N., range 12 E. of the Indian meridian, containing ten (10) acres and being the land in controversy in Cherokee allotmet No. 4914, be and remain a portion of the allotment selection of Vinita Perry, the minor contestee therein, subject to her final enrollment as a citizen of the Cherokee Nation under the act of Congress approved April 26, 1906 (34 Stat. 137), and that the records of the Cherokee Land Office be made to conform in all things to this decision.

"[Signed] J. S. Wright,
"Commissioner to the Five Civilized Tribes.
"Dated this 5th day of November, 1909."

This case was appealed by the contestant, plaintiff herein, to the Commissioner of Indian Affairs, and on the 8th day of April, 1910, said Commissioner affirmed the decision of the Commissioner to the Five Civilized Tribes, and thereafter the contestant, plaintiff herein, appealed from the Commissioner of Indian Affairs to the Secretary of the Interior who, on the 11th day of May, 1910, affirmed the decision of the Commissioner to the Five Civilized Tribes, and also the Commissioner of Indian Affairs, and rendered his decision in favor of the contestee, defendant herein, as follows:

"This Department has carefully considered the record in this case and finds the conclusion to be proper and just. Your decision is therefore affirmed."

After final decision and disposal of said case by the Department of the Interior, the plaintiff in error commenced this action in the district court of Tulsa county, as an action in equity to declare a trust, and as grounds therefor concludes as follows:

"(1) In the judgment of each of said officers there was manifest error of law and gross mistake of facts, and among other errors of law and gross mistake of facts of said officers, they erred in holding that the improvements on the land were not sufficient to segregate the same or to give notice to others of the rights of the plaintiff.

"(2)   Each of said officers erred in holding that the plaintiff was not in possession of the land at the time it was filed on by the defendant.

"(3)   Each of said officers erred in holding that the plaintiff did not have a tenant on the land at the time it was filed on by the defendant.

"(4)   Each of said officers erred in holding that the execution by the plaintiff of the contract with J. M. Boling and Ruth A. Davis for the transfer of the land to them, in the event of the contestant being successful, forfeits his right to the land. That this plaintiff has no other land to file upon in the Cherokee Nation, and that in equity and good conscience he is entitled to the land in this case; that as the plaintiff is informed the Indian officers have exhausted their jurisdiction in the matter and have issued certificates of allotment to the defendant Vinita Perry.

"The premises considered, the plaintiff asks that the title to the land be decreed to be in the plaintiff, and that the claim of the defendants and each of them be decreed to be of no validity; that the plaintiff have a decree to this effect and to the further effect that he is entitled to the possession of the land involved in this controversy, and that the plaintiff have all other and further relief, to which in equity and good conscience he may be entitled."

To the plaintiff's petition, the defendant filed a general demurrer, which was sustained by the court, and to which the plaintiff saved his exceptions, and comes to this court on petition in error. The only points presented by the petition in error are: First. The court erred in sustaining the demurrer to the petition. Second. The court erred in rendering judgment against the plaintiff.

The demurrer raises the sole and only question as to whether the officers of the Interior Department, and especially the final decision of the honorable Secretary of the Interior Department, misapplied or misconstrued the law as applicable to the facts found by that Department. The plaintiff in error, in his petition in the district court, and also in his petition in error and briefs in

.this court, makes the contention that the land tribunals erred in their findings of fact. It has been the settled law of this country for many years, that the findings of fact by the different officers of the Interior Department are conclusive upon all the courts of the country, including the Supreme Court of the United States.

The record does not contain a copy of the contestant's affidavit of contest, but we gather from the testimony and also from the findings of the Commissioner to the Five Civilized Tribes, herein set out, that his grounds of contest were, that at the time the defendant made her selection and filed on said tract, the plaintiff was in possession thereof, and had lasting and valuable improvements thereon. Upon this question the honorable Commissioner to the Five Civilized Tribes finds as a fact that at the date the contestee, defendant herein, filed on said tract:

"It was a part of a large inclosure which was in the possession and under the control of some person other than the contestant, and that the only improvements on said tract was an old dilapidated wire fence running across the east side of said tract, and that said improvements or fence had not been placed thereon by the contestant, and were not worth to exceed the sum of $9; that at the time the contestee filed on said tract said contestant, plaintiff herein, was not in possession thereof, but simply claimed the improvements on said tract which had been placed there by some other person, and that he had placed no tenant in charge of said land."

The Commissioner further finds:

"That some time during the month of October, 1907, subsequent to the institution of the contest, said contestant and his wife executed and delivered to J. M. Boling and Ruth A. Davis a contract, in which it was stipulated that should said contestant be successful in his contest for the land in controversy, he and his wife were to execute and deliver to said Boling and Davis, for the consideration of $340, a warranty deed conveying to them the land involved in said contest, together with other land."

The honorable Commissioner further finds:

"That it was stipulated in said contract of sale of said land, that said J. M. Boling and Ruth A. Davis were to pay all of the expenses incurred in the prosecution of the contest."

From the above finding of facts, the Department very properly holds:

(1) "That the improvements on the land were not sufficient to segregate the same or to give notice to others of the rights of contestant;" (2) "that the contestant was not in possession of the land at the time it was filed on by the contestee;" (3) "that the plainiff did not have a tenant on the land at the time it was filed on by the contestee."

All these are findings of fact, and are conclusive, and could not be considered by the district court, for the reason that under the acts of Congress, and the rules of the different departments having charge of the disposal of public lands, all questions of fact as to settlement, improvements, good faith, the acts necessary to establish settlement, or any other like matters, to be determined in the disposal of the public domain, the facts are left entirely to the different tribunals having those matters in charge, and when settled by those officers, such findings are final, conclusive, and binding upon the courts.

The act of Congress provides, in substance, that all questions involving the disposal of the public land arising between different settlers and claimants shall be settled by these officers; and, as we understand it, these same rules are applicable and controlling in determining the rights of contesting claimants to Indian allotment selections. In determining these questions of fact, including settlement, inhabitancy, possession and improvement, it becomes necessary for the departmental officers to inquire into, and determine the good faith of such claimants, in order to judge upon the claim of the parties respectively. These are all ques-

tions of fact of precisely the nature of such as in an ordinary
law trial are submitted to the jury. After these questions of
fact are so found and settled by the land officers they are final.
On this question, our own Supreme Court says:

"When officers of the land office decide controverted questions
of fact, in the absence of fraud, imposition, or mistake, their
decisions on these questions are final, except as they may be
reversed on appeal in that Department." (*Ross v. Stewart,* 25
Okla. 611, 106 Pac. 870.)

The Supreme Court of the United States in passing upon
this question says:

"The rulings of the Land Department on disputed questions
of fact, made in a contested case as to settlement and improve-
ments of a * * * claimant, are not open to review by the
courts." (*Shepley v. Cowan,* 91 U. S. 331, 23 L. Ed. 424).

"For mere errors of judgment upon the weight of evidence in
a contested case before" the Land Department, "the only remedy
is by appeal from one officer of the Department to another."
(*Id.,* 91 U. S. 340, 23 L. Ed. 424.)

"It is only contended that" the land officers "erred in their
deductions from the proofs presented; and for errors of that kind,
where the parties interested had notice of the proceedings before
the Land Department, and were permitted to contest the same, as
in the present case, the courts can furnish no remedy." (*Id.,* 91
U. S. 340, 23 L. Ed. 424).

"On matters depending upon conflicting evidence as to the
extent of occupation and the value of improvements, and any
other matters, the action of the" land officers "is undoubtedly
final." (*Rector v. Gibbon,* 111 U. S. 289, 4 Sup. Ct. 611, 28
L. Ed. 427).

"It would lead to endless litigation, and be fruitful of evil,
if a supervisory power were vested in the courts over the action
of the numerous officers of the Land Department, on mere ques-
tions of fact presented for their determination. It is only when
those officers have misconstrued the law applicable to the case, as
established before the Department, and thus have denied to parties

rights which, upon a correct construction, would have been conceded to them, or where misrepresentations and fraud have been practiced, necessarily affecting their judgment, that the courts can. in a proper proceeding, interfere and refuse to give effect to their action. On this subject we have repeatedly and with emphasis expressed our opinion, and the matter should be deemed settled." *Quinby v. Conlan,* 104 U. S. 426, 26 L. Ed. 800; *Johnson v. Towsley,* 13 Wall. 72, 20 L. Ed. 485; *Shepley v. Cowan,* 91 U. S. 330, 23 L. Ed. 424.

Counsel for plaintiff in error seems to base his contentions upon three propositions, as follows: (1) The court erred in holding that the improvements on the tract were not sufficient in law to segregate the land. (2) The court erred in holding that the improvements located on the tract were not sufficient in value to constitute a segregation of the land. (3) The court erred in holding that the acts of contestant, in executing and delivering a contract for the sale of the tract, raises a reasonable presumption of his intention to abandon and forfeit his rights to the land.

The first two contentions will be disposed of together. The Interior Department, through its proper officers, finds as a matter of fact, that the contestant was not the owner of the improvements on the land, and that takes out of the case, entirely, the question as to whether the court erred, in holding as a matter of law, that the improvements on the tract were not sufficient to segregate the land. It will be seen at a glance, that an investigation of that matter would compel us to go into a consideration of the facts, which, under the undivided long line of authorities, we cannot do. That also settles the other proposition—if the contestant was not the owner of the improvements on the land, the question as to whether they were sufficient in value to segregate the tract is immaterial. That proposition is so self-evident that it needs no further comment. That brings us to the last proposition, which, as a matter of fact, is the sole and only question of law in the case, and therefore the only proposition

left for this court to consider, and that is, did the land officers err, in holding that the execution, by the plaintiff, of the contract, in which he agreed to transfer the land, in the event of his being successful in the contest proceedings, forfeit his right to hold the tract as a part of his allotment selection. That proposition of law has been passed upon so often that it seems hardly necessary to enter into a discussion of it. The proposition goes directly to one of the primary questions necessary to entitle a claimant to obtain title to government land, and that is the question of good faith. The question of speculation in government land which is abhorred and absolutely forbidden in every class and kind of proceedings, so far as we have been able to ascertain, unless it might possibly be the matter of obtaining title to town lots under the town site law. Such was the holding of the several branches of the Department through which this case passed until it finally reached the Secretary of the Interior, who placed his seal of approval upon the decisions of the lower officers and affirmed the case. The only question that the district court could determine and settle was whether or not the different officers of the Land Department, or we might say, the Secretary of the Interior, who made the final decision of the matter, properly determined the question of law, as applied to the facts found by the Department. That question has been passed on time and again, so far as it relates to government homesteads, pre-emptions, timber culture claims, and other like applicants for government land entries. The same rule has been applied to entries for mineral land. A sale of land included and within a coal declaratory statement prior to final proof and entry defeats the right of the claimant to purchase the land, and an entry thereof made in his name must be canceled. *In re Union Coal Co,.* 17 Land Dec. Dept. Int. 351.

After all, it is simply a question of fact for the reason that the honorable Secretary of the Interior holds, by affirming the decisions of the two commissioners, that the execution of the contract "raises a reasonable presumption of his intention to abandon

and forfeit his rights in said land." That simply goes to a question of fact—a lack of good faith; an' intention to abandon and forfeit his rights to the land; evidence of speculation. Again, what difference does it make in the final result? The land officers had already decided as a question of fact that. the improvements on the land were not placed there by the plaintiff in error, that they did not belong to him, and even if he had placed them there, and they had belonged to him, they were not 'of sufficient value to entitle the plaintiff to a segregation of the land. Those matters of fact are settled by the decisions of the Department. And by reason of those facts, the plaintiff had absolutely no chance whatever to succeed in his contest, and thereby obtain title to the land. Then what difference does it make how many contracts he entered into agreeing to sell the land in case he succeeded in his contest? With a sincere hope that the questions involved in this case may be definitely settled in this state, we call attention to the following decisions of the Supreme' Court of this state and the United States:

In the case of *Myers v. Berry,* 3 Okla. 612, 41 Pac. 580, the Supreme Court of Oklahoma Territory said:

"The findings of fact made in a lot controversy by a board of town-site trustees appointed under the Act of Congress approved May 14, 1890 [chapter 207, 26 Stat. 109 (U. S. Comp. St. 1913, secs. 5029-5035)] relating to town sites in Oklahoma, are final and conclusive unless on appeal to the proper departmental officers. The courts will not inquire into the facts or evidence upon which findings are based unless it is clearly made to appear that such findings were procured by fraud, imposition or misrepresentation to the manifest injury of the party complaining."

Speaking further in that case the court said:

"The trustees were necessarily required to find, as a question of fact, before issuing the deed, that the defendant was an occupant of the lots in dispute at the time the town site was entered, and that he had a better claim than that of the plaintiff. This must necessarily, under the allegations of the complaint, have

been a disputed question, and the finding of the trustees is conclusive and final in the absence of any fraud or imposition, and no fraud or imposition is alleged. * * * The court has no power or authority to review the facts or weigh the evidence taken before the board, in order to determine whether they arrived at proper conclusions of fact."

In the case of King v. Thompson, 3 Okla. 644, 39 Pac. 466, the same principle is laid down in the following language:

"It is well settled that the misconstruction of the law by the officers of the Department which will authorize the interference of the court, must be clearly manifest, and not alleged upon a possible finding of the facts from the evidence different from that reached by such officers."

"The town-site trustees are required to pass upon controverted questions of fact, between adverse claimants to lots, and for errors of judgment on the weight of the evidence, the only remedy is by appeal to their superiors in the Land Department, and the courts will not exercise any jurisdiction over such questions unless it is made clearly manifest that some fraud or imposition was practiced, which occasioned a conclusion different from what it otherwise would have been."

In the case of Thornton v. Perry, 7 Okla. 441, 54 Pac. 649, the same principle is announced. In that case the court further said:

"The allegation in the petition that the testimony given in the contest cause does not prove abandonment goes alone to the weight of the evidence, and cannot be considered by a court of equity. If there is any evidence tending to support the conclusions of the officers of the Land Department, such conclusions will be final and conclusive, unless reversed on appeal, and courts will not disturb such conclusions."

In the case of Paine v. Foster, 9 Okla. 213, 53 Pac. 109, this question was discussed in a lengthy opinion by Justice Burford. In that case the Supreme Court said:

"When the petition sets out all the evidence taken before the

Land Department, the decison of the register and receiver, and of the superior officers on appeal, and contains the allegation that the final decision of the Secretary of the Interior, adverse to the claimant, had no evidence or facts of any character for its basis, or that such decision was rendered without any evidences or circumstances whatever to warrant the same, a court of equity will review the evidence sufficiently to determine the question as to whether there was any evidence tending to support the Secretary's conclusions, or from which a reasonable inference could be * * * drawn, warranting his findings. If there is any evidence, however slight, tending to support the conclusion of the Secretary of the Interior in a controverted land case, or if there are facts and circumstances detailed in evidence from which * * * conclusions may be reasonably and rationally inferred, then such conclusions become final and the courts will not review the weight of the evidence."

The Supreme Court of the Territory of Oklahoma, with a full bench, in adopting the opinion of Justice Burford in this case as the opinion of the court, concludes in the following language:

"The opinion written by Justice Burford, we now adopt as the opinion of the court, except that part referring to defect of parties. From this record, however, it seems clear that Paine settled on the land in controversy before any settlement was made by the town-site settlers; and, if this cause were submitted to us on the evidence introduced before the Land Department, our conclusions as to the facts would probably be different from the findings of fact of the Secretary of the Interior; but, inasmuch as there is some evidence which tends to support the findings of the Secretary of the Interior, we are precluded from weighing the same. The rule that the courts are bound by the findings * * * of the Secretary of the Interior, if there is any evidence to support them, in some cases seems harsh; but this rule is laid down by the highest court of the land, and, so far as we have been able to find, has been universally followed. Therefore we feel bound to adhere thereto."

In the case of *Ross v. Stewart*, 25 Okla. 611, 106 Pac. 870, referred to by plaintiff in error in his brief in this case, this court used the following language:

"Viewed in this aspect, the case at bar is one in which the complainant seeks to set aside and impeach the judgment of the Land Department; and the doctrine is too well settled to admit of any controversy that the decisions of that tribunal upon questions properly pending before it can only be annulled when such fraud or imposition is shown to have been practiced as prevented the unsuccessful party in a contest from fully presenting his case, or the officers composing the tribunal from fully considering it, or when such officers have themselves been guilty of fraudulent conduct, or when it is made to appear that, upon the case established before the Land Department, the law applicable thereto was   *   *   *   misapplied."

The Supreme Court of the United States, in the case of *Vance v. Burbank,* 101 U. S. 514, 25 L. Ed. 929, laid down the same principle as follows:

"The question in dispute is one of fact; that is to say, whether Scott, when he demanded his patent and certificate as against the other contesting claimants, had resided on and cultivated the lands in dispute for four consecutive years, and had otherwise conformed to the requirements of the donation act. This was to be determined by the Land Department, and as there was contest, the contending parties were called on in the usual way to make   *   *   *   proofs. They appeared, and full opportunity was given Scott to be heard. He presented his evidence and was beaten, after having taken the case through by successive stages on appeal to the Secretary of the Interior. This, in the absence of fraud, is conclusive on all questions of fact. We have many times so decided."

See *Lee v. Johnson,* 116 U. S. 48, 6 Sup. Ct. 249, 29 L. Ed. 570; *Quinby v. Conlan,* 104 U. S. 420, 26 L. Ed. 800; *Johnson v. Towsley,* 80 U. S. 72 (13 Wall.) 20 L. Ed. 485; *Marquez v. Frisbie,* 101 U. S. 473, 25 L. Ed. 800.

In the last-named cases the Supreme Court of the United States laid down the rule that:

"Where there is a mixed question of law and of fact, and the court cannot so separate it as to see clearly where the mistake

of law is, the decision of the tribunal to which the law has confided the matter is conclusive."

The evidence fails to show that the defendant, Olympus Oil Company, has any interest in the land, and we so hold.

We find no error in the judgment of the trial court, and recommend that it be affirmed.

By the Court: It is so ordered.